Harnik & Finkelstein LLP
Stephen M. Harnik, Esq.
Attorneys for Pensionsversicherungsanstalt
645 Fifth Avenue, 7th Floor
New York, New York 10022
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

IN THE UNITED DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Pensionsversicherungsanstalt,                    Docket No. 07-5300

                          Plaintiff,
         - against -
The Estate of Rose Eisinger;
Sonja Rosenbaum individually and as
distributee of the Estate of Alphons Rosenbaum;
Gladys Robinson and Phillip L. Greenblatt,

                          Defendants.

------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT TO ITS OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM AND ORDER DATED MAY 11, 2009 AS AMENDED MAY 12, 2009

May 26, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………..…..i

INTRODUCTION…………………………………………………….…………...1

SUMMARY OF ARGUMENT………………………………………...…..….......1

PERTINENT PROCEDURAL FACTS…..……………………………..…...........2

ARGUMENT

POINT I
PLAINTIFF'S NEED TO CLARIFY THE LETTERS ROGATORY POST DISCOVERY CUTOFF IS *NOT* "A PROBLEM OF PLAINTIFF'S OWN MAKING;" MOREOVER, THE PRE-MOTION CONFERENCE IS MORE THAN 90 DAYS HENCE SO THERE WILL BE NO DELAY OR PREJUDICE IF THE REQUESTED RELIEF IS GRANTED…………………………8

    A. STANDARD OF REVIEW. …....…………………………………………8

    B. THE MAGISTRATE JUDGE'S DENIAL OF PLAINTIFF'S
       REQUEST TO ENLARGE THE DISCOVERY CUTOFF IN
       ORDER TO PERMIT PLAINTIFF ADDITIONAL TIME TO
       CLARIFY THE LETTERS ROGATORY MAY BE
       DISPOSITIVE AND WAS, IN ANY EVENT, MISTAKEN……………...9

POINT II
THE IDB SUBPOENA SHOULD NOT HAVE BEEN PARTIALLY QUASHED...10

    A. PLAINTIFF WAS NOT GIVEN AN OPPORTUNITY
       TO BE HEARD AS REQUIRED UNDER
       LOCAL CIVIL RULE 37. 3(C)………………………………..……10

    B. WITHOUT OBJECTION FROM IDB, PLAINTIFF SHOULD NOT
       HAVE BEEN REQUIRED TO "JUSTIFY" ITS SUBPOENA….…....11

CONCLUSION………………………………………………...................……14

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page**

*Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816,
at *1 (S.D.N.Y. Mar. 15, 2007) ...................................................................................8, 10

*Easley v. Cromartie*, 532 U.S. 234, 242 (2001) ...................................................................10

*Eisenberg v. New England Motor Freight, Inc.*, 564 F.Supp.2d 224,
226 (S.D.N.Y.2008) ..........................................................................................................8

*Hickman v. Taylor*, 329 U.S. 495, 501, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ...............12

*In re Subpoena issued to Dennis Friedman, Esq.* 350 F. 3d 65, 68 (2d Cir. 2003) ...........13

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F.Supp. 1071, 1080
(S.D.N.Y.1990) .................................................................................................................9

*Schlagenhauf v. Holder*, 379 U.S. 104, 114-15, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) ....12

*Sony Music Entertainment v. Does 1-40* 326 F. Supp. 2d 556, 559 (S.D.N.Y. 2004) ......10

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ............................................10

**Statutes**

28 U.S.C. § 636(b)(1) .......................................................................................................8, 13

28 USC §636 (b) (1) and Fed.R.Civ.P. 72(b) (3) ....................................................................1

Fed.R.Civ.P. 72(a) ...................................................................................................................8

Fed.R.Civ.P. 72(b) (3) .............................................................................................................8

Fed.R.Civ.P. 72(b)(2) ..............................................................................................................8

# INTRODUCTION

This Memorandum of Law is submitted on behalf of plaintiff, Pensionsversicherungsanstalt, ("plaintiff"), pursuant to 28 USC §636 (b) (1) and Fed.R.Civ.P. 72(b) (3) to set aside or modify the Memorandum and Order of the Magistrate Judge dated May 11, 2009, (Dkt. # 89) as amended on May 12, 2009, (Dkt. #90), ("the Order"). In its Order, the Magistrate Judge i) denied plaintiff's letter request for a 90-day extension of discovery in order to clarify Letters Rogatory, and ii) partially quashed plaintiff's subpoena *duces tecum* served upon IDB Bank of NY ("IDB").

# SUMMARY OF ARGUMENT

The court denied plaintiff's request for an extension of time for additional time to complete discovery because the fact discovery cutoff was March 26, 2009 and "…plaintiff's failure to pursue certain discovery, in the hopes that the case would settle [at mediation], is a problem of plaintiff's own making." It partially quashed plaintiff's subpoena *duces tecum* served upon non-party witness, IDB, because plaintiff "…[did] not mention, let alone seek to justify, this request." Without saying so, the court seems to have accepted defendants' argument that the subpoena was a "fishing expedition."

It is respectfully submitted that the Order should be set aside or modified because i) the delay in discovery was *not* "a problem of plaintiff's own making;" ii) the court did not give plaintiff an opportunity to justify the subpoena; and iii) plaintiff should not have been required to justify the subpoena without an objection from IDB.

1

Regarding (i) and (ii): had the Magistrate Judge fully reviewed the record (or given plaintiff the opportunity to do that for her – *see* below), it would have seen that this case did not get underway for close to nine months through no fault of plaintiff's. Specifically, after the case was filed, plaintiff had been unable to locate defendant Robinson and was only able finally to find her with the assistance of a private detective. Once she had been found, plaintiff acted with all deliberate speed in respect of the Letters Rogatory and through no fault of its own, the Letters Rogatory were not answered and filed with the court until a month after the discovery cutoff.

Regarding (iii): on a motion to quash, the Federal Rules and the Local Civil Rules both provide that the respondent be given an opportunity to respond. In this case, the court made its decision without giving plaintiff an opportunity to be heard. Had the plaintiff been given that opportunity, the court would have seen that the subpoena was justified and that it did seek admissible evidence. Moreover, plaintiff should not have had to "justify" its subpoena in the first place.

## PERTINENT PROCEDURAL FACTS

Briefly summarized, plaintiff, which is the Austrian Pension Institute, paid a widow and disability pension to defendant Sonja Rosenbaum's mother-in-law, Rose Eisinger ("decedent"). The decedent died on October 4, 1989. Under Austrian law, her pension entitlement, therefore, terminated with the month of her death. However, for a period of seventeen (17) years, Alphons Rosenbaum, ("Alphons"), Rose's son, regularly submitted falsely notarized life certificates which purported to show that decedent was still alive. Alphons died on September 26, 2005. Thus, falsely led to believe that decedent was still alive, the Austrian Pension Institute continued to pay decedent's pension through May 2006 in a total sum of €109,247.13. It was only after Alphons had died that plaintiff discovered the fraud.

2

Defendant Rosenbaum has been sued for unjust enrichment. Defendants Robinson and Greenblatt acted as the notaries and have been sued herein for notarial misconduct. As to the latter two defendants, among other things, neither set forth on any of the bi-annual life certificates, in the blank space provided therefor, the identity document (*e.g.* passport or driver's license, etc.) of the person whose signature they each notarized. Rather, both notaries left that space blank. This indicates that, in fact, no *bona fide* identity document was ever shown to either of them.

The summons and complaint were filed on December 19, 2007. Issue was joined in respect of defendant Rosenbaum on March 14, 2008, and with respect to defendant Greenblatt on July 9, 2008. Following filing of the complaint, the undersigned sought to locate defendant Robinson who was known to plaintiff only by virtue of her notary stamp which showed that she had been qualified in Bronx County, but gave no address. No notary named Gladys Robinson could be found in the Bronx. Therefore, in May, 2008 the undersigned subpoenaed the New York Department of State, Division of Licensing Services to request a last known address for defendant Robinson (Docket #13). This subpoena came back negative. Since Alphons had lived in Nassau County, plaintiff also checked those county's records but without success. In June, 2008, we hired a private detective and in July, plaintiff finally located Robinson living in Tuscon, Arizona under a different name.

On July 25, 2008, plaintiff served the summons and complaint on Ms. Robinson by mail. In response thereto, Ms. Robinson called us on July 29, 2008 and we encouraged her to seek legal counsel. Since her notarizations had mostly occurred at IDB where both she and Alphons had been employed, we concurred when she suggested that she speak with IDB about legal representation. About an hour after speaking with Ms. Robinson, we received a call from Julie

3

Copeland, Esq., IDB's in-house counsel who told us that IDB was going to assist Ms. Robinson and asked us to email her a copy of the pleadings, which we did. On August 19, 2008, we were contacted by Lucia T. Chapman, Esq. of counsel to Law Office of Henry Putzel, III who told us that she would be representing Ms. Robinson.

The very same day, on August 20, 2008, plaintiff served its motion for issuance of Letters Rogatory to be served upon Bank Austria which effected the payments in this matter (Docket #'s 33 & 34). Those Letters asked the Bank to authenticate its records of payment and to produce copies of the checks which were fraudulently endorsed (since the payee - decedent - was dead).

Following a request by the Magistrate Judge for a Supplemental Brief from plaintiff, (Docket # 38-42), on September 9, 2008, the Magistrate Judge signed an order for Letters Rogatory (Docket #42) and plaintiff thereupon immediately sent the Letters Rogatory to the U.S. Secretary of State for transmission through diplomatic channels to the Austrian Ministry of Justice.

Meantime, defendants were orally deposed, plaintiff amended its complaint (Docket #57), and court ordered mediation took place on May 5, 2009, which failed. Accordingly, on May 9, 2009, we wrote the court as follows (Harnik Decl. Exhibit "A"):

> Dear Magistrate Judge Mann:
>
> We represent plaintiff in the above captioned matter. We write to advise Your Honor of the status of this matter and to request that discovery be kept open for another 90 days.
>
> On April 17, 2009, Plaintiff's representative was orally deposed by phone. That same day, defendant Rosenbaum served her First Request for Production of Documents pursuant to Rule 34, returnable May 20.
>
> On April 20, 2009, Letters Rogatory were received by the Clerk's office from the U.S. State Department and docketed (Dkt. #84).

4

On April 22, 2009, defendant Greenblatt served his First Request for Production of Documents pursuant to Rule 34 returnable May 26.

On May 5, 2009, the Mediation Session took place. Plaintiff, for its part, was most appreciative of Mediator Eli Uncyk's considerable and sincere efforts to bring closure to this matter, but regretfully the Mediation did not produce a settlement. I understand that Mr. Uncyk will be reporting on the Mediation Session separately to Mr. Gerald Lepp. Following the unsuccessful Mediation, plaintiff served a subpoena *duces tecum* on IDB Bank of NY calling for copies of any pension payments received by the decedent Alphons Rosenbaum, who had been an IDB employee, as well any correspondence relevant to the issues in this case. Due to an oversight, a copy of the subpoena was not served on all parties. On May 8, 2009, we emailed a copy of the subpoena to all parties.

On May 7, 2009, we emailed defendants' counsel that in light of the failure of Mediation, plaintiff would request that discovery remain open for another 90 days so as to allow it to have clarification of the Letters Rogatory and to allow time for IDB's response to the subpoena. As to the former, in a nutshell, in its response to the Letters Rogatory as set forth in the Protocol dated 16.2.2009, (Dkt. #84) Bank Austria, by its designated deponent/employee, Susanne Bauer, averred before Austrian Judge Mag. Karin Praxl that the bank was not able to answer any of the Questions propounded due to Austria's bank secrecy law which (akin to US law) prohibits a bank from disclosing information regarding private bank accounts. However, subject to our conferring with Austrian counsel, we do not believe that Austria's bank secrecy law is applicable to the Questions. For example, Questions 4-8, simply asked the bank to authenticate a business record previously disclosed by Bank Austria (which instrument is attached as ex. "A" to the Questions); Question 12 similarly asked for verification of information which is public knowledge; and Questions 15 & 16 asked whether ex. "A" was made in the regular course of the bank's business, which again does not relate to bank secrecy. As it is possible that these issues may not be "informally" clarified, but rather, will have to be addressed in the context of an ancillary proceeding in Austria, we refrained from addressing this issue in the vain hope that the Mediation would bring a settlement which, as stated, was not the case. Thus, as soon as the Mediation ended unsuccessfully, we subpoenaed IDB Bank of NY because it is possible that IDB's records will suffice as substitute proof for what we are seeking from Bank Austria, thus making the Letters Rogatory moot.[1]

---

[1] A copyset of the questions is annexed to the Harnik Declaration as ex. "B". (They are also attached to the motion for an Order for Letters Rogatory (Dkt. # 33-34).

5

> In our email to counsel requesting an extension of time to complete discovery, we asked for their position. Yesterday, we were advised by counsel for Rosenbaum that because of the oversight in not serving him with a copy of the subpoena, and because he believes the subpoena was untimely, he would oppose the extension. He also advised that he would ask that the subpoena be quashed. In point of fact, as noted above, two document demands, one propounded by his client, the other by defendant Greenblatt remain outstanding, and the response to Greenblatt's demand is actually due *after* IDB's response to the subpoena is due, so obviously there is no prejudice in respect of the subpoena even if it were untimely (which we dispute). Moreover, because of the problem with Bank Austria's response to the Letters Rogatory, as explained above, plaintiff may need extra time to complete its pretrial discovery. (We remain hopeful that IDB's response to the subpoena will obviate this).
>
> On May 7, defendant Robinson's counsel wrote us that her client intended to file a motion to dismiss. She wrote that she did not oppose our request for an extension of time so long as it did not delay her motion. Yesterday, however, counsel changed her position and wrote that she opposed the extension because it was untimely and not properly noticed. She wrote that she will join defendant's motion to quash.
>
> Counsel for Greenblatt has as yet not responded to our request for the extension.
>
> Accordingly, for the foregoing reasons, and because we perceive no prejudice to defendants, I respectfully request that discovery remain open for another 90 days.
>
> Respectfully,

In response to this letter, defendants wrote that the extension should be denied. They also requested that the subpoena be quashed. (Harnik Decl. ex's "C", "D" & "E", respectively, Dkt #'s 86,87,88).

Without giving plaintiff an opportunity to respond to defendants' letters requesting quashing of the subpoena, the court rendered its Order disallowing any further discovery and striking those portions of the subpoena *duces tecum* which sought IDB's personnel file

concerning Alphons, and any correspondence concerning the issues in this action. (Harnik Decl. ex. "F", Docket #90).

On May 19, 2009 counsel for defendant Greenblatt, Mr. Mortati, wrote the Magistrate Judge to request to be excused from a settlement conference scheduled by the court for May 28, 2009 because his client intended to move for summary judgment. (Dkt. # 91). Simultaneously, he wrote this court asking for a pre-motion conference to make such motion (Dkt # 92). Copies of these letters are together annexed to the Harnik Declaration as exhibit "G".

On May 20, 2009, plaintiff replied pointing out that summary judgment was not appropriate because there are material issues of fact in dispute (Dkt # 94). Also on May 20, IDB served its response to the partially quashed subpoena. It reported that it had no documents, (Harnik Decl. ex. "H"). By letter of same date, (Dkt # 93) the undersigned wrote to the Magistrate Judge replying to Mr. Mortati's letter and at the same time advised the court of IDB's response to the subpoena. As stated above, it had been hoped that if IDB response to the subpoena showed Alphons's receipt of the monthly pension, it might not still be necessary to seek clarification of the Letters Rogatory. That not being the case, in our May 20, letter we reiterated that Bank Austria's response had been received by the court after discovery cutoff and, therefore, it had not been possible to follow up beforehand. We again requested that plaintiff be permitted to seek to have proof of the payments authenticated by Bank Austria.

On May 21, 2009, the court scheduled a pre-motion conference for September 18, 2009 (Dkt # 95).

On May 22, 2009 by endorsed order the Magistrate Judge again denied plaintiff's request writing "…As the Court noted in its 3/11/09 Memorandum and Order, plaintiff's failure to diligently pursue discovery is a problem of its own making." (Docket #97).

# ARGUMENT

## POINT I

**Plaintiff's need to clarify the Letters Rogatory post discovery cutoff is *not* "a problem of plaintiff's own making;" moreover, the pre-motion conference is more than 90 days hence so there will be no delay or prejudice if the requested relief is granted.**

**a. Standard of Review.**

A district court reviewing a report and recommendation addressing a dispositive motion " 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.' " 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed.R.Civ.P. 72(b)(2), and must be made "[w]ithin 10 days after being served with a copy of the recommended disposition." *Id.*; *see also* 28 U.S.C. § 636(b)(1).

Where a party submits timely objections to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b) (3); *Donahue*, 2007 WL 831816, at * 1. The district court "may adopt those portions of the ... report [and recommendation] to which 'no specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law ." *See Eisenberg v. New England Motor Freight, Inc.*, 564 F.Supp.2d 224, 226 (S.D.N.Y.2008) (quoting Fed.R.Civ.P. 72(b)(2)).

The appropriate standard of review depends on whether the issue decided by the magistrate is dispositive or nondispositive. As to nondispositive matters, a district court shall reverse a magistrate's findings if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (1982); Fed.R.Civ.P. 72(a). However, as to those matters deemed by congress to be dispositive, the court's review is governed by a *de novo* standard. 28 U.S.C. § 636(b)(1)(B) (1982); Fed.R.Civ.P. 72(b). *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F.Supp. 1071, 1080 (S.D.N.Y.1990).

### b. The Magistrate Judge's denial of plaintiff's request to enlarge the discovery cutoff in order to permit plaintiff additional time to clarify the Letters Rogatory may be dispositive and was, in any event, mistaken.

The Magistrate Judge denied plaintiff's request to clarify the Letters Rogatory because the relief requested exceeded the discovery cutoff and because of a lack of diligence on plaintiff's part. Respectfully, that is not correct. As shown above, once defendant Robinson had finally been located – a process that required hiring a private detective – plaintiff moved almost immediately for an order to issue Letters Rogatory which was granted a short 19 days following Robinson's waiver of service of the summons. Bank Austria's response to the Letters was obviously not within the control of plaintiff and was not filed with the court until April 20, 2009, which post-dated discovery cutoff by 20 days. Since mediation was scheduled a short two weeks later, plaintiff reasonably waited to seek clarification of the Letters pending the outcome of mediation.

It is submitted that the denial of further discovery is arbitrary, particularly since the pre-motion conference is more than 90 days hence (*see* Dkt # 95) and presumably (other than the settlement conference) there will be no activity in this case between now and then. Thus, if

9

plaintiff is permitted to pursue clarification of the Letters Rogatory it should not delay this case.[2] Nor will this burden any of the defendants as they did not object to the Letters in the first place. Moreover, a denial of clarification may be dispositive of the pleadings if Bank Austria's authentication of its payments is a necessary element of plaintiff's proof. Accordingly, this court's review of the record is *de novo, Donahue v. Global Homes, supra.* Indeed, whether or not it is dispositive, "[t]he magistrate judge's findings may be considered "clearly erroneous" where, " 'on the entire evidence,' the [district court] is 'left with the definite and firm conviction that a mistake has been committed.' " *Easley v. Cromartie,* 532 U.S. 234, 242 (2001) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). On this record, it is respectfully submitted that a mistake has been committed, because a grant of the relief requested by plaintiff will not prejudice any party.

## POINT II

### The IDB subpoena should not have been partially quashed

**a. Plaintiff was not given an opportunity to be heard as required under Local Civil Rule 37. 3(c).**

It is fundamental that on a motion to quash, the respondent be given an opportunity to be heard. *Sony Music Entertainment v. Does 1-40* 326 F. Supp. 2d 556, 559 (S.D.N.Y. 2004). In this case, the Magistrate Judge issued her Order *on the same day* that defendants requested that the IDB subpoena be quashed and without giving plaintiff an opportunity to be heard. In a footnote, the Magistrate Judge wrote, "[a]nticipating defendant's motion to quash, plaintiff set forth its argument on this issue in its letter-request of May 9, 2009." However, that is not correct. Plaintiff's letter-request of May 9 (Harnik Decl. ex "A", Dkt # 85) merely asked that

---

[2] 90 days is plaintiff's guesstimate of how long it may take to have clarification. This is not a matter within plaintiff's control. Plaintiff can only assure the court that if and when it has leave to conduct the necessary inquiry through diplomatic channels it will proceed forthwith.

discovery be extended in order to allow it to obtain clarification of the Letters Rogatory. In the interest of full disclosure, plaintiff had advised the court that defendants had *indicated* that they would move to quash, however, no such motion/request had as yet been made. Clearly, it would have been premature to respond to a motion before having even seen it. In fact, if anything was anticipated, it was that defendants would make their motion to quash in accordance with normal motion practice or Local Civil Rule 37.3(c), which gives the respondent receiving a letter-request 3 days to submit a responsive letter.

**b. Without objection from IDB, Plaintiff should not have been required to "justify" its subpoena.**

The Magistrate Judge partially granted defendants' motion on the basis that plaintiff had not "justified" its subpoena *duces tecum*. The documents which plaintiff sought were listed in exhibit "A" to the subpoena which read as follows:

1. All bank statements relating to the accounts of Alphons Rosenbaum (date of birth: 12/03/1935; date of death: 09/26/2005; SSN: 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) at Israel Discount Bank of New York ("IDB") from November 1989 through and including February 2005 which show wire transactions or copies of check deposits (front and bank) relating to an Austrian pension in the name of Rose Eisinger.
2. Alphons Rosenbaum's personnel file (upon information and belief, Mr. Rosenbaum was an IDB employee from 1986 until his death.)
3. All correspondence between IDB and defendant Gladys Robinson (now known as Gladys Wray, maiden name Medina) or any other person concerning this action (Ms. Robinson notarized life certificates for Alphons Rosenbaum from 1989 - 1999). Ms. Robinson was an IDB employee from June 2, 1980 until mid-December 1997.

(*See* Harnik Declaration ex. "C," Docket #86).

The Magistrate Judge quashed items #2 & 3 as overly broad in scope and because those two items had not been "justified." However, as noted below, in the normal case, a party does

11

not need to justify its discovery requests, and here IDB had not moved to quash, rather the defendants had moved to quash because they claimed that plaintiff was on a "fishing expedition." That was not the case:

    i.    the notarial misconduct alleged in the complaint was done at the behest of Alphons who was an IDB employee. Alphons's widow, defendant Rosenbaum, testified that she did not know whether Alphons maintained any checking or savings accounts at IDB into which he may have deposited the ill-gotten overpayments. Plaintiff seeks to inspect Alphons's personnel file to see if it reflects whether he maintained any accounts at IDB and whether there is any mention of his having conducted any private business while employed at IDB, including his bi-annual requests of fellow-employee Robinson to have the life certificates notarized.

    ii.    As explained above, after defendant Robinson was served she evidently contacted IDB to seek legal assistance. Plaintiff is interested to see any relevant correspondence as it may reflect upon IDB's policies in respect of customer and/or employee notarizations as well as a review or comment upon Robinson's conduct in that regard.

    iii.    It may be observed that objection to the subpoena was asserted not by IDB, but by defendant Rosenbaum who claimed it was a "fishing expedition." Rosenbaum has maintained throughout this lawsuit that she knew nothing about Alphons's nefarious conduct in regard to the submission of false life certificates, nor anything about his activities at IDB where he worked. Certainly, the subpoena was not a burden on Rosenbaum since it was not

directed to her. Indeed, the fact that Rosenbaum and the other defendants were motivated to move to quash may itself be the best evidence that the subpoena was not a "fishing expedition," but rather may uncover incriminating evidence.

As stated by Judge Sotomayor in *In re Subpoena issued to Dennis Friedman, Esq.* 350 F. 3d 65, 68 (2d Cir. 2003):

> The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long "accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried on in the dark." *Schlagenhauf v. Holder,* 379 U.S. 104, 114-15, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (quoting *Hickman v. Taylor,* 329 U.S. 495, 501, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (internal quotation marks omitted)). Indeed, the rules provide for the taking of discovery, including by oral depositions, "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "[r]elevant information need not be admissible." See Fed.R.Civ.P. 26(b)(1) (emphasis added). *Moreover, the rules generally do not place any initial burden on parties to justify their deposition and discovery requests.* See, e.g., Fed.R.Civ.P. 30(a)(1) ("A party may take the testimony of any person ... by deposition upon oral examination without leave of court.") (emphasis added); Fed.R.Civ.P. 26(c) (permitting courts to issue a protective order upon "good cause shown" by the party opposing discovery). (Emphasis supplied).

Here, plaintiff may be faulted only for not having served its subpoena upon IDB prior to discovery cutoff. However, given that there will be no prejudice to defendants in plaintiff's having served its subpoeana beyond discovery cutoff, (as explained above) items 2&3 of the subpoena should not have been stricken. Without any objection to the subpoena coming from IDB, plaintiff should not have been required to justify the scope of its subpoena; in any event, the information sought may lead to admissible evidence, and therefore, it was justified.

## CONCLUSION

For the foregoing reasons, it is submitted that the Order should be set aside or modified.

Dated: New York, New York
       May 26, 2009

                              Harnik & Finkelstein LLP


                              By: _____/s_____
                                Stephen M. Harnik, Esq.
                              Attorneys for Plaintiff
                              Pensionsversicherungsanstalt
                              645 Fifth Avenue, 7th Floor
                              New York, New York 10022
                              (212) 599-7575