UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PENSIONSVERSICHERUNGSANSTALT,

                    Plaintiff,                    07 CIV. 5300 (TLM)

      -against-

THE ESTATE OF ROSE EISINGER;
SONJA ROSENBAUM INDIVIDUALLY
AND AS DISTRIBUTEE OF THE ESTATE
OF ALPHONS ROSENBAUM; GLADYS
ROBINSON AND PHILLIP L. GREENBLATT,

                    Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*

*Of Counsel:*
      Lewis R. Silverman

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS..........................................................................................1

PLAINTIFF'S *IN LIMINE* APPLICATIONS........................................................3

THE EVIDENCE IS RELEVANT AND PROBATIVE........................................4

CONCLUSION ...........................................................................................................9

i

# TABLE OF AUTHORITIES

**Cases:**

Charles Hyman , Inc. v. Olsen Industries, Inc.,
    227 A.D.2d  270, 277, 642 N.Y.S.2d 306 (1st Dept. 1996).................................................7

Dragon Investment Co. II LLC v. Shanahan,
    49 A.D.3d 403, 405, 854 N.Y.S.2d 115. 118 (1st Dept. 2008)...........................................7

Paramount Film Distrib. Corp. v. State of New York,
    30 NY2d 415, 421, 285 NE2d 695, 334 NYS2d 388 (1972)
    *cert. denied*, 414 US 829, 94 S Ct 57, 38 L Ed 2d 64 (1973)........................................4, 6

**Statutes, Rules and Regulations**

Austrian Law ASVG § 100

## PRELIMINARY STATEMENT

Defendant, SONJA ROSENBAUM, by and through her *pro bono* attorneys, RUTHERFORD & CHRISTIE, LLP, respectfully submits this Memorandum of Law in opposition to the plaintiff's motion *in limine*. The defendant respectfully submits that the plaintiff's motion *in limine* seeking to exclude certain trial testimony and exhibits should be denied.

## STATEMENT OF FACTS

The case facts are very straight forward and undisputed. The defendant, Sonja Rosenbaum, was married to Alphons Rosenbaum from 1956 until his death in September 2005. Mr. Rosenbaum's mother, Rose Eisinger, received a widow's pension from the Austrian government after the death of her husband, Mr. Eric Eisinger, sometime in the early 1960's-time period. Mrs. Eisinger then remarried Mr. Fred Weitz in approximately 1962. Mrs. Eisinger (-Weitz) continued to receive the Eisinger widow's pension after her remarriage to Mr. Weitz.

Pensionsversicherungsanstalt's own regulations, however, provide that widows' pensions terminate upon remarriage. See Austrian Law ASVG § 100 entitled "Lapse of Benefits." This regulation is well known to the plaintiff and this particular regulation regarding termination of benefits upon remarriage was appended as an Exhibit to the plaintiff's Complaint and subsequent Amended Complaints filed with the Court. It is undisputed that Pensionsversicherungsanstalt does nothing at all to investigate whether a widow-pensioner remarries and it will continue to pay the pension as long as it receives a "life certificate" indicating that the pensioner is still alive. In this case, therefore, Pensionsversicherungsanstalt

1

actually had no obligation to pay the Eisinger widow's pension at all after Mrs. Eisinger's remarriage to Mr. Weitz in approximately 1962. As such, Pensionsversicherungsanstalt failed to mitigate its alleged damages in this matter, which is not only relevant to the equitable considerations on the unjust enrichment claim, but is also relevant to the conversion claim.

Mrs. Eisinger (-Weitz) died in October 1989. At that point, it appears that Mr. Rosenbaum, completely unbeknownst to Mrs. Rosenbaum, continued to send life certificates on behalf of his now-deceased mother to Pensionsversicherungsanstalt. Mr. Rosenbaum, it seems, continued to send the life certificates to Pensionsversicherungsanstalt from 1989 until February 2005, before he died on September 26, 2005. After her husband passed away, Mrs. Rosenbaum returned the checks received after Mr. Rosenbaum died to Pensionsversicherungsanstalt. Prior to this time, Mrs. Rosenbaum had no dealings with the plaintiff for any reason.

At no point during their marriage did Mr. and Mrs. Rosenbaum keep any joint checking and/or savings accounts. Mrs. Rosenbaum testified at her deposition that her husband contributed to joint living expenses, but she did not have any knowledge that her husband's contributions to any of those joint living expenses came from monies received as part of any payments by Pensionsversicherungsanstalt. It is undisputed that Mrs. Rosenbaum had no knowledge whatsoever that her husband was receiving the Eisinger pension, or even that Rose Eisinger herself was receiving a pension from Austria while she was still living.

Moreover, Mr. and Mrs. Rosenbaum each filed for bankruptcy on two occasions prior to Mr. Rosenbaum's death, the second time being shortly before Mr. Rosenbaum died in September 2005. Thus, it can be plainly seen that Mr. Rosenbaum's estate consisted of nothing other than his own personal effects and life insurance, which Mrs. Rosenbaum exhausted to discharge her debts in

bankruptcy in approximately November 2006.  What is even more significant is the plain fact that Mrs. Rosenbaum had and continues to have major financial difficulties in these still very troubled and difficult economic times, which clearly belie plaintiff's allegations of unjust enrichment.

## PLAINTIFF'S *IN LIMINE* APPLICATIONS

The plaintiff seeks to exclude from trial several areas of Mrs. Rosenbaum's anticipated testimony and documentary exhibits. The excluded items include the information about Rose Eisinger (-Weitz)'s life and remarriage and Mrs. Rosenbaum's past and current dire financial condition.  Although plaintiff's motion indicates that we will seek to introduce Mrs. Rosenbaum's deposition transcript, that is not accurate and was not listed as an exhibit.  The following will address each of the items plaintiff seeks to exclude and demonstrate why such evidence, as it relates to the equitable claim of unjust enrichment, should be admitted and considered by the Court in rendering its decision.

Furthermore, and in any event, the plaintiff has not made a request to bifurcate the punitive damages claim and any such bifurcation application is opposed by Mrs. Rosenbaum.  Mrs. Rosenbaum's finances are undoubtedly relevant to any determination of the punitive damages claims at issue, as the plaintiff apparently concedes in its motion.

3

## THE EVIDENCE IS RELEVANT AND PROBATIVE

Throughout the course of this protracted nearly five-year old litigation, Plaintiff's counsel continually and conveniently ignores the well settled principle that an unjust enrichment claim is an equitable claim, or he simply just does not understand the elements of the claim he is pursuing against Mrs. Rosenbaum. As noted in Paramount Film Distrib. Corp. v. State of New York, 30 NY2d 415, 421, 285 NE2d 695, 334 NYS2d 388 (1972), *cert. denied*, 414 US 829, 94 S Ct 57, 38 L Ed 2d 64 (1973), the "essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience" to permit a defendant to retain what is sought to be recovered.    An unjust enrichment claim is "undoubtedly equitable and depends on broad considerations of equity and justice." Id. at 393. The Court must consider the totality of all of the circumstances. Thus, in order to establish an unjust enrichment claim, a plaintiff must address the equities of the situation.    A defendant is entitled to introduce evidence to the Court, which determines the claim, that bears on these broad considerations of equity and justice. The supposed risk of prejudice is outweighed because the Court determines the unjust enrichment claim and can take the evidence at face value.

In the case at bar, the uncontested equitable considerations here include Mrs. Rosenbaum's background as a widowed Holocaust survivor, her past bankruptcies and financial situation, as well as her current financial situation. These are clearly relevant facts and there is no undue prejudice to the plaintiff if the Court hears this evidence. In fact, it is respectfully submitted that the Court should look at whether the "benefit remains with the defendant, if there has otherwise been a change of position of the defendant and whether the defendant's conduct was tortious or fraudulent." Id. Here, it is uncontroverted that there has been a change of position of the defendant because her financial

4

condition is worse now than it has been in the past. Furthermore, there is no evidence whatsoever that Mrs. Rosenbaum's conduct was tortious or fraudulent.

Furthermore, this Honorable Court, as a court of equity, should consider which party is better able to absorb the cost of the alleged losses in light of the parties relative actions or inactions, culpability and due diligence or lack of due diligence. Is the plaintiff, which is a large well-financed multinational foreign corporation, better able to withstand the losses here than a widowed, nearly destitute, elderly woman? A key consideration that will assist the Court in balancing the equities includes Pensionsversicherungsanstalt's admitted lack of due diligence regarding whether Mrs. Eisinger (-Weitz) was entitled to the pension in the first place and whether it could have reasonably discovered Mr. Rosenbaum's actions.

In fact, the First Amended Complaint admits that "[s]o long as plaintiff received [life certificates], it continued making payments." The Senior Claims Administrator at Pensionsversicherungsanstalt overseeing this case admitted this allegation and also confirmed its complete and utter lack of mitigation and due diligence during her deposition. Not surprisingly, the Senior Claims Administrator has between 200 and 300 such cases of "overpayments abroad" relating to pension payments to remarried or deceased pensioners. Moreover, in this case, the only reason that Pensionsversicherungsanstalt became aware that it was making payments that it should not have been, was because Mrs. Rosenbaum wrote it a letter returning nine checks that had come in the months after her husband's death in September 2005. This further demonstrates Mrs. Rosenbaum's good faith and fair dealings with Pensionsversicherungsanstalt, who now sue her and ask this Honorable Court to impose liability against her for acts she did not commit and did not even know

5

about. If Mrs. Rosenbaum had anything to do with the previous payments, why would she alert Pensionsversicherungsanstalt about payments she was receiving?

Pensionsversicherungsanstalt argues that it could not mitigate damages because it did not know and had no reason to know that Mrs. Eisinger was dead. This is belied, however, by the fact that after Mrs. Rosenbaum returned checks she received after her husband's death, Plaintiff fairly quickly found out through its own investigation that Mrs. Eisinger died and the date that she died. This shows that it could have done this years ago on its own instead of simply relying on the life certificates (which it knows from its own experiences are not the most reliable or truthful). In fact, when it received a letter from Mr. Rosenbaum inquiring about the pension, it could have done its own investigation and learned that Mrs. Eisinger was deceased. Moreover, Pensionsversicherungsanstalt could have mitigated its damages many years before that, and indeed prevented any damages from occurring at all, through some due diligence in determining whether Mrs. Eisinger had remarried following Mr. Eisinger's death.

Pensionsversicherungsanstalt's counsel's arguments that these undisputed equitable facts are not relevant and should be excluded from evidence at trial is a misguided attempt to distract the Court's attention from what the New York Court of Appeals has described as the "essential" element in an unjust enrichment claim. See Paramount Film Distrib. Corp., *supra,* 30 N.Y.2d at 421. In balancing the equities present in the instant case, Mrs. Rosenbaum's circumstances clearly outweigh Pensionsversicherungsanstalt's circumstances and the Court should be able to come to a conclusion that the alleged harm could have been prevented decades ago by even the most basic due diligence. It is, after all, well settled that "[a] claim for unjust enrichment does not lie to relieve a party "of the consequences of [the party's] own failure to . . . exercise caution with respect to a business

6

transaction." <u>Dragon Investment Co. II LLC v. Shanahan</u>, 49 A.D.3d 403, 405, 854 N.Y.S.2d 115. 118 (1st Dept. 2008); <u>Charles Hyman , Inc. v. Olsen Industries, Inc.</u>, 227 A.D.2d 270, 277, 642 N.Y.S.2d 306 (1st Dept. 1996).

In addition, plaintiff's arguments that the equitable evidence will "confuse the issues, mislead the jury, unduly delay the trial and will be a waste of time" (Plaintiff's Memorandum, p. 4) are preposterous because the Court determines the issue. Furthermore, there is no real risk of jury confusion and this testimony will not serve to inordinately prolong, delay or waste any of the court's or jury's time during what is anticipated by all parties to be an extremely brief two-day trial.

As an equitable claim, under the totality of all of the circumstances, the undisputed evidence is that Mrs. Rosenbaum is a widowed Holocaust survivor who had absolutely no knowledge of her husband's alleged fraud and that the large multinational governmental agency did nothing at all to prolong or mitigate its damages. The plaintiff admittedly accepted receipt of notarized life certificates, and nothing more, to continue issuing pension payments long after it should have ceased making payments.

Here, Pensionsversicherungsanstalt brazenly admits that it did absolutely nothing to prevent overpayment of the Eisinger pension. To begin with, the Eisinger pension should have been terminated in the early 1960's, after Mrs. Eisinger remarried Mr. Weitz. If Pensionsversicherungsanstalt had done any due diligence at all, Mr. Rosenbaum would never have been able to allegedly receive pension payments after 1989. Instead, by Pensionsversicherungsanstalt's own admission, they did nothing to confirm that Mrs. Eisinger was entitled to continue to receive the pension. Despite Pensionsversicherungsanstalt's admitted knowledge that numerous others had attempted to defraud it, it still did nothing to verify for itself

7

that Mrs. Eisinger (-Weitz) was still alive.  This utter lack of mitigation surely tips the equities in favor of Mrs. Rosenbaum, a widowed Holocaust survivor who had absolutely no knowledge that her husband was purportedly receiving a pension to which he was not entitled.

Furthermore, Mrs. Rosenbaum is nearly destitute in these increasingly difficult economic times, which is particularly so in her field of residential real estate sales.  As the Court is aware, the undersigned counsel has taken this case on a *pro bono* basis because Mrs. Rosenbaum is unable to afford an attorney.  The fact that the undersigned counsel is acting *pro bono* is also relevant so that the fact finder, both the Court on the equitable unjust enrichment claim, and the jury on the conversion claim, can understand that Mrs. Rosenbaum is even unable to afford a lawyer to fend off the lawsuit filed by the plaintiff.  While we concede that Mrs. Rosenbaum's affidavit may not need to be admitted into evidence and is only identified in the event that it is needed for some use at trial, the net worth statement should be admissible.  The Court should be able to see the defendant's net worth as it relates to the unjust enrichment claim and the jury should likewise be able to see the statement when considering the claim for punitive damages.

## CONCLUSION

Based on the above, it is respectfully requested that the court deny the plaintiff's motion *in limine* and for such other, further and different relief as this court deems just and proper.

Dated: New York, New York
July 25, 2012

Respectfully submitted,

**RUTHERFORD & CHRISTIE, LLP**

By: _____

Lewis R. Silverman (LS 9723)
Attorneys for Defendant
Sonja Rosenbaum,
individually and as distributee
of the Estate of Alphons Rosenbaum
369 Lexington Avenue, 8th Floor
New York, New York 10017
(212) 599-5799

TO:  Harnick, Wilker & Finkelstein
Attention: Stephen M. Harnick, Esq.
Attorneys for Plaintiff
Pensionsversicherungsanstalt
645 Fifth Avenue, 7th Floor
New York, New York 10022

Burke, Scolamiero, Mortati & Hurd, LLP
Attention:  Thomas J. Mortati, Esq.
Attorneys for Phillip L. Greenblatt
7 Washington Square
P.O. Box 15085
Albany, New York 12212-5085

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*** was furnished via regular mail and via ECF to:

> Harnick, Wilker & Finkelstein
> Attention: Stephen M. Harnick, Esq.
> Attorneys for Plaintiff
> Pensionsversicherungsanstalt
> 645 Fifth Avenue, 7th Floor
> New York, New York 10022
>
> Burke, Scolamiero, Mortati & Hurd, LLP
> Attention:  Thomas J. Mortati, Esq.
> Attorneys for Phillip L. Greenblatt
> 7 Washington Square
> P.O. Box 15085
> Albany, New York 12212-5085

on this 25th day of July, 2012.

_____
Lewis R. Silverman (LS 9723)

10